## CITY OF TEXARKANA v. MABRY.

### No. 4956.

Court of Civil Appeals of Texas. Texarkana.

April 22, 1936.

Rehearing Denied April 30, 1936.

Spivey & Levee, of Texarkana, for appellant.

King, Mahaffey & Wheeler, of Texarkana, for appellee.

HALL, Justice.

Appellee brought this suit in the district court of Bowie county for an injunction against the city of Texarkana, appellant prohibiting said city, its officers and agents, from interfering with appellee or her lessee with respect to the erection by them of a modern first-class gasoline and oil filling station on the property of appellee located within said city at Olive and Seventh streets.

Appellant answered by general and special demurrers which were overruled, general denial, and also pleaded certain ordinances adopted by said city, which will be discussed later in this opinion.

Appellant alleges that appellee had not attempted to comply with any of the ordinances of said city regulating the construction of gasoline and oil filling stations. By referring to the judgment of the court and the supplemental petition of appellee, we are led to believe that J. R. Greenwood, N. P. Sanderson, and Mrs. Kate Bresowitz, as property owners living adjacent to the property of appellee, were permitted by the court to intervene in this case. As to the nature of their intervention we are again left to conjecture, but, from appellee's supplemental petition in answer to their intervention, we conclude that their contentions were that the erection of a modern first-class gasoline and oil filling station on the property of appellee would materially injure interveners' property for residence purposes, materially increase the fire hazard in the locality, make it unsafe for persons traveling on Olive and Seventh streets, materially interfere with the comfort of interveners in their use of their property by reason of noises incident to the operation of a filling station on appellee's property, and cause noxious odors by virtue of its operation.

The case was tried to a jury on special issues, all of which were answered favorably to appellee, and the court rendered judgment accordingly, permanently enjoining appellant from in any wise interfering with appellee or her lessee in constructing a filling station on her premises. From this judgment appellant has appealed to this court.

Appellant brings forward a number of assignments of error, all of which relate to the holding by the trial court, in effect, of certain ordinances of said city invalid and granting a permanent injunction against it. It is undisputed that appellee owns a lot in said city located on the west side of Olive street and on the south side of Seventh street. The following stipulation appears in the record:

"It is agreed that on the trial of this cause, Mrs. Lucie Mabry, the plaintiff, introduced ample testimony to support each and all of the findings of the jury made and returned as the verdict in this cause.

"It is agreed that on the trial of this cause, William V. Brown, the Mayor of said City of Texarkana, Texas, testified that no comprehensive zoning ordinance, embracing the City of Texarkana, Texas, had ever been passed.

"The plaintiff, Mrs. Lucie Mabry, proved by ample testimony, the manner in which modern, up-to-date filling stations are erected and operated; and proved that there was no intention to place upon said lot a garage, but only a modern, first class gasoline and oil filling station, to be operated in keeping with modern methods."

The jury found in answer to special issues submitted to them: (1) That, considering the location of the property of the interveners in this case and the number of motor vehicles that pass their property and the noxious odors incident to the operation of such vehicles, the erection and proper operation of a modern retail gasoline and oil filling station on the property of appellee described in her petition would not materially interfere with the comfort of the interveners, or any one of them, in the use of their property. (2) The erection and proper operation of a modern gasoline and oil filling station on the property of appellee would not materially endanger the safety of persons who may travel on Seventh and Olive streets in the city of Texarkana, Tex. (3) The erection and proper operation of a modern gasoline and oil filling station on appellee's property would not materially increase the danger of fire to the property of interveners or any one of them. (4) The erection and proper operation of a modern gasoline and oil filling station on the property of appellee would not materially interfere with the comfort of interveners or any

of them in the use of their property by reason of noises incident to the operation or repair of motor vehicles or tires in the conduct of such filling station. (5) And the erection and proper operation of a modern gasoline and oil filling station on appellee's property would not materially interfere with the comfort of interveners or either of them in the use of their property by reason of any noxious odors arising from the operation of said filling station.

The ordinances of the city of Texarkana, appellant, involved in this appeal, and by virtue of which appellant seeks a reversal of the judgment of the trial court, are:

"An ordinance entitled: 'An ordinance requiring all persons, firms or corporations who desire to erect a filling station within the corporate limits of the city of Texarkana, Texas, to publish a notice of their intention to erect said filling station, said notice to be published for ten days prior to the filing of said application of the establishment of filling stations and the erection thereof, and declaring an emergency':

"Be it ordained by the city council of the city of Texarkana, Texas:

"Section 1: Hereafter it shall be unlawful for any person, firm or corporation to build or erect any gasoline filling station within the corporate limits of the City of Texarkana, Texas, without first having complied with the terms of this ordinance.

"Section 2: Any person, firm or corporation desiring to erect a filling station shall before erecting the same publish a notice in some newspaper published in the City of Texarkana, Texas, for ten (10) consecutive days before the application hereinafter mentioned is made to the City Council for a permit to erect said station.

"Said notice shall be substantially as follows:

" 'Notice is hereby given that —— will apply at the next regular meeting of the City Council for a permit to erect a gasoline filling station on Lot No. —— Block No. ——, located at No. —— Street, in the City of Texarkana, Texas. Signed ——.'

"Section 3: After the publication of the preceding notice such person, firm or corporation shall make application substantially as follows before the City Council for a permit to erect such filling station: 'Application is hereby made for the erection of a filling station to be located on Lot No. —— in Block No. —— at No. —— Street, in the City of Texarkana, Texas, Signed —— Applicant.'

"Section 4: Upon the filing of said application the City Council may at its discretion grant or refuse said permit and if there are objections filed to the issuance of said permit the City Council may at its discretion set a day for a hearing and hear all objections to the establishment of said filling station and may postpone said hearing from time to time and refuse to grant said application as it may see fit and proper.

"Section 5: Before any filling station shall be erected under the terms of this ordinance the plans and specifications for said filling station must first be submitted to the building inspector and receive his approval and the same must be constructed under the directions and supervision of the building inspector of the City of Texarkana, Texas.

"Section 6: Any person, firm or corporation violating any of the provisions of this ordinance shall be deemed guilty of a misdemeanor and upon conviction in the corporation court, shall be fined in any sum not less than $5.00 nor more than $25.00 and each day that such person, firm or corporation shall refuse to comply with the provisions of this ordinance shall be deemed a separate offense and punishable accordingly."

"An ordinance to prohibit for a period 10 years the construction, erection, operation or use of any building or structure for oil, gasoline or battery station, public garage, repair shop, pressing or cleaning establishment, store or similar or related purpose within that portion of the city of Texarkana, Texas, situated between Sixth street and Ninth street and extending from the alley between Olive and Pine streets to the alley between Olive and Wood streets, prescribing penalties and declaring an emergency.

."Be it ordained by the city council of Texarkana, Texas:

"Section 1. The erection, construction, operation or use of any building or structure for oil, gasoline or battery station, or public garage, or repair shop, or pressing or cleaning establishment, or store, or other similar or related purpose within that portion of Texarkana, Texas, situated between Sixth Street and Ninth Street and extending from the alley between Olive and Pine Streets to the alley between Olive and Wood Streets, are hereby prohibited for a

period of 10 years from and after the approval hereof.

"Section 2: Any person violating any of the provisions of Section 1 hereof shall be deemed guilty of a misdemeanor and upon conviction thereof shall be punished by a fine in any sum not less than $10.00 nor more than $25.00; and each day said violation is continued shall constitute a separate offense.

"Section 3: All ordinances and parts of ordinances in conflict herewith insofar as same affects the territory above described are hereby repealed but nothing herein shall be construed as limiting the passage hereafter of a comprehensive zoning ordinance.

"Section 4: The fact that certain interests are contemplating the immediate erection and use of buildings within the territory herein described for some of the purposes hereby prohibited thereby creating increased fire hazard and other dangers to the residences and other buildings now located in said territory creates an emergency authorizing the suspension of the requirements of the Charter that no ordinance shall be passed on the first day it is placed before the City Council, and that all ordinances shall be referred to the Ordinance Committee and it report thereon, and the same are at the request of the Mayor, hereby suspended, and this ordinance shall take effect and be in force from and after its passage and approval.

"Passed and approved this the 14th day of June, 1927.

"H. S. Brashear, Mayor."

It will be noted that section 3 of the ordinance copied last above, if valid, repeals, in so far as the property of appellee is concerned, the ordinance copied first above; therefore we shall discuss first the validity of the ordinance copied last above. This ordinance can find no support in the Revised Statutes (Vernon's Ann.Civ.St.) articles 1011a–1011j, Acts 1927, 40th Leg., c. 283, for the reason that it was enacted before the legislative act became effective. But, if it had been enacted by the city after the effective date of articles 1011a–1011j it still would have no support in the statute, for the reason that the ordinance is in no sense a comprehensive zoning ordinance. The ordinance so states by its terms. Moreover, the testimony of Mayor Brown of Texarkana, Tex.; is to the effect that said city has never adopted a comprehensive zoning ordinance. The question which presents itself, then, Is this ordinance prohibiting for a term of ten years from the date of its adoption the erection of a gasoline and oil filling station within an area comprising three city blocks in which is included the property of appellee, a reasonable exercise by the city of Texarkana of its police power in protecting the citizenship from annoyance, danger, fire hazard, etc.? The ordinance itself reveals that it was enacted to get ahead of some person owning property located in said restricted area who was prepared to erect a structure in said area in which was to be carried on a business outlawed by said ordinance. We do not think it was the intention of the Legislature in enacting statutes, articles 1011a–1011j, commonly known as the zoning statute, to confide in a city governing body the right to single out a small section of its residential district and prohibit therein a lawful business without regard to whether said business would materially increase the fire hazard, endanger the lives of the citizenship, or materially add to their discomfort. In Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.(2d) 475, 476, Chief Justice Cureton says:

"It is to be observed from the articles quoted that the zoning power is to be exercised for the purpose of promoting health, safety, morals, or the general welfare of the community, and that the zoning power of the municipality is to be exercised in accordance with some comprehensive plan designed:

"(a) 'To lessen congestion in the streets.'

"(b) 'To secure safety from fire, panic and other dangers.'

"(c) 'To promote health and general welfare.'

"(d) 'To provide adequate light and air.'

"(e) 'To prevent the over-crowding of land.'

"(f) 'To avoid undue concentration of population.'

"(g) 'To facilitate the adequate provision of transportation, water, sewerage, schools, parks, and other public requirements.'"

The police power of a city is subordinate to the right to acquire and own property, and this right of the citizen can never be abridged, except in cases of public calamity or where the public health, safety, comfort, or welfare of the community is in danger by the use to which said property is put. Spann v. City of Dallas, 111 Tex. 350, 235

S.W. 513, 516, 19 A.L.R. 1387; Tex.Jur. Vol. 30, § 58, p. 120. The ordinance by its terms reveals its purpose, especially when taken in connection with the fact that certain citizens of said city whose residence property is located within a small area intervened in their individual capacity seeking to uphold this ordinance. This ordinance was not enacted to protect the city as a whole from fire hazard, danger to public health, or annoyances, etc., but, as revealed by its terms, to satisfy the æsthetic taste and desires of the inhabitants of the small area affected by it. For the reasons above stated, we think this ordinance is invalid, being inhibited by the Fourteenth Amendment to the United States Constitution, § 1, and the Texas Constitution, article 1, § 19.

We shall next consider the ordinance copied first in this opinion. It will be noted that this ordinance requires that notice of intention to erect a gasoline and oil filling station must be published in the newspaper for ten consecutive days before application is made to the city authorities for a permit. After the required publication is had, the property owner must make an application in form substantially as set forth in said ordinance. Then the city council may at its discretion grant or refuse said permit, but, should objections be filed to the issuance of a permit, the council may refuse same. An ordinance similar to this one was considered in the case of Spann v. City of Dallas, supra, and Continental Oil Co. v. City of Wichita Falls, 42 S.W.(2d) 236, 240, by the Commission of Appeals. In the latter case Justice Ryan discusses at length the numerous decisions dealing with ordinances similar to the ones here under consideration, and he concludes:

"The trial court's findings of fact are in no way set aside by the Court of Civil Appeals for insufficiency of evidence to support them, and upon them no judgment other than one for the defendant could have been rendered. The 'extra hazard to school children or other pedestrians who pass the premises' is found to be 'not material.' The only injury found is a property injury due to depreciation in the vicinity for strictly residential purposes, but such depreciation is because of æsthetic considerations and is found to be 'no more than would necessarily follow and be incident to the location of any other lawful business on said corner.'

"The fact that owners have invested hundreds of thousands of dollars in homes around the proposed filling station site, and that the presence in the neighborhood of structures such as that contemplated by plaintiff in error renders less desirable, and even less valuable, their property for home purposes, does not constitute the proposed structure a nuisance so as to enjoin its construction as an unlawful interference with the rights of such home owners. The same result might follow from the construction of a number of cheap and undesirable residence cottages in the same neighborhood. The law cannot and does not undertake to deny the ordinary right of an owner to use his property as he pleases upon a consideration thus purely æsthetic, even though it does result in pecuniary loss.

"If there be no public or private nuisance created in the use of property, no recovery can be had for the diminution in value of nearby property by reason of the lawful use of such property. The harm or damage is that which comes from the unlawful use of property and not from its lawful use. Marshall v. City of Dallas (Tex.Civ.App.) 253 S.W. 887."

The right of appellee to construct a filling station on her property under this ordinance is made to rest, first, on the discretion of the city council; and, secondly, on the whims of those persons who file objections to the issuance of the permit, and this without regard to whether the business of a gasoline and oil filling station of the kind and character proposed to be erected by appellee or her lessee is harmful to the community. The stipulation entered into between the parties herein is: "The plaintiff, Mrs. Lucie Mabry, proved by ample testimony, the manner in which modern, up-to-date filling stations are erected and operated; and proved that there was no intention to place upon said lot a garage, but only a modern, first class gasoline and oil filling station, to be operated in keeping with modern methods."

It is well recognized by the authorities in this state that a modern gasoline and oil filling station is not a nuisance per se and can only become so by the manner of its use, at which time it may be abated by recourse to the courts. In Spann v. City of Dallas, supra, it is said:

"This feature of the ordinance, in our opinion, reveals its true purpose. It reveals with reasonable clearness that its object is

not to protect the public health, safety or welfare from any threatening injury from a store, but to satisfy a sentiment against the mere presence of a store in a residence part of the City.

"It is doubtless offensive to many people for a store to be located within a given area where they own residence property. Others would possibly regard the store as a convenience. An æsthetic sense might condemn a store building within a residence district as an alien thing and out of place, or as marring its architectural symmetry. But it is not the law of this land that a man may be deprived of the lawful use of his property because his tastes are not in accord with those of his neighbors. The law is that he may use it as he chooses, regardless of their tastes, if in its use he does not harm them. Under the Common Law and in a free country a man has the unqualified right to erect upon his land non-hazardous buildings in keeping with his own taste and according to his own convenience and means, without regard to whether they conform in size or appearance to other structures in the same vicinity, even though they may tend to depreciate the value of surrounding improved and unimproved property. Bostock v. Sams, 95 Md. 400, 52 A. 665, 59 L.R.A. 282, 93 Am.St.Rep. 394.

"It would be tyranny to say to a poor man who happens to own a lot within a residence district of palatial structures and his title subject to no servitude, that he could not erect an humble home upon it suited to his means, or that any residence he might erect must equal in grandeur those about it. Under his constitutional rights he could erect such a structure as he pleased, so long as it was not hazardous to others. It might proclaim his poverty; it might advertise the humbleness of his station; it might stand as a speaking contract between his financial rank and that of his neighbors. Yet, it would be his 'castle'; and the Constitution would shield him in its ownership and in its use.

"If the citizen is not to be left free to determine the architecture of his own house, and the lawful and uninjurious use to which he will put it; if he is not to be permitted to improve his land as he chooses without hurt to his neighbors; if by law he is to be allowed to do these things only as officials or the public shall decree, or as may for the time suit the taste of a part of the community, the law might as well deal candidly with him and assert that he holds his property altogether at public sufferance. It might as well prescribe the kind of clothes he and his family shall wear and the sort of food they shall eat. Some people are as much offended by the clothes and diet of other people as they are by the style of their houses."

That portion of the ordinance requiring the submission of the plans and specifications to the building inspector for his approval or disapproval is invalid for the reason that no standard of requirements is furnished as a guide to the inspector or property owner. It may be that a person desires to erect a filling station of the best material and of modern design, yet, if the building inspector thought other material was better suited and another design was more appealing to him, he would be authorized under this ordinance to deny a permit. Chief Justice Phillips, in the case of Spann v. City of Dallas, supra, in discussing an ordinance similar in this respect to the one under consideration, says: "A further vice in the ordinance is that even with the necessary consent of the property owners of the district, a business house may not be erected within it except upon the building inspector's approval of the design of the building. No rule or standard is given to govern the applicant in fashioning the design of his building or to govern the inspector in approving or rejecting it. The ordinance leaves it to the unbridled discretion of the inspector to disapprove the design, resulting in a refusal of the permit and the prohibition of the building. This leaves the right to construct the building subject to the arbitrary discretion of the inspector, and of itself renders the ordinance void. The very essence of American constitutions is that the material rights of no man shall be subject to the mere will of another. Yick Wo v. Hopkins, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220."

It is true the appellee did not attempt to comply with either of the ordinances under investigation, and, in our opinion, she was not required to do so. It would have been an idle gesture on her part to have published her notice the required length of time in the newspaper and made application for a permit, knowing, as she must, that one of the city's ordinances forbade the erection of a gasoline and oil filling station on her property for a period of ten years from the date of its adoption.

As said by Judge Ryan in Continental Oil Co. v. City of Wichita Falls, supra:

"We are passing upon the single question of that particular ordinance's validity, and not upon any other.

"What is here said has no reference to so-called 'zoning statutes' and 'zoning ordinances,' and we express no opinion thereon."

The zoning statutes specifically authorize zoning ordinances comprehensive in their nature, and these statutes and a comprehensive zoning ordinance passed under their authority have been held valid in the exhaustive opinion of Lombardo v. City of Dallas, supra, by Chief Justice Cureton. This authority, in our opinion, does not pass upon ordinances of the character as the case under discussion here.

It is our opinion that both the ordinances set out above in this opinion are invalid as being in contravention of the Fourteenth Amendment, § 1, United States Constitution, and article 1, § 19, Texas Constitution.

Therefore the judgment of the district court is affirmed.